## Florence Rosengren, Appellee, v. Manufacturers National Bank of Rockford, Appellant.

### Gen. No. 6,880.

1. APPEAL AND ERROR, § 1306*—*when proper replication presumed.* In an action of replevin where defendant pleaded *non cepit, non detinet,* and property in another, and a special replication should have been but was not filed to the third plea, and the record shows that the parties went to trial by agreement, a proper oral replication is presumed.

2. APPEAL AND ERROR, § 906*—*when clerk cannot preserve propositions of law.* The clerk has no power to preserve for review documents purporting to contain propositions of law submitted to the court which bear nothing to show that they were offered by any one nor who wrote the word "refused" on the margin thereof, nor to certify what action the court took thereon.

3. APPEAL AND ERROR, § 906*—*when propositions of law not sufficiently preserved for review.* Where error was assigned upon the refusal of propositions of law and, according to the abstract, appellant requested the court to hold certain propositions of law which the court refused to do and marked each proposition as refused, but in fact no such statement is made in the record and no propositions of law are in the bill of exceptions, what there is in the record of that nature being in an entirely different place from that indicated by the abstract and consisting of certain documents in the form of propositions of law which were copied into the record by the clerk and had on the margin of each the word "refused," with the file mark of the clerk upon them, no ruling of the court on the propositions of law is preserved for review.

4. APPEAL AND ERROR, § 1489*—*when admission of incompetent evidence not ground for reversal.* That the court, in a cause tried without a jury, admitted incompetent evidence over objection, is not ground for reversal if the judgment is sustained by a preponderance of the competent evidence.

5. WITNESSES, § 48*—*when objection to competency to be raised.* A party aware of the fact which makes a witness incompetent must make the objection at the first opportunity, and cannot wait to see whether it is more profitable to let it stand than to exclude it.

6. WITNESSES, § 139*—*when widow replevying property given her by deceased husband competent.* In an action of replevin by

*See Illinois Notes Digest Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Rosengren v. Manufacturers National Bank, 220 Ill. App. 608.

a widow against a bank to recover possession of property left in a safety deposit box by her deceased husband, claiming the contents as a gift from him, the court properly held, in answer to an objection to plaintiff as a witness on the ground that the administrator was defending, that the administrator was not defending and that the court would hear the evidence and determine its competency.

7. WITNESSES, § 139*—*when widow competent in action against third person.* In a suit in replevin by a widow against a bank to recover property claimed by her as a gift from the husband and left by him in a safety deposit box, an objection to her as a witness to conversations with the husband on the ground that the suit involved a claim by her against the estate of a deceased person, was properly overruled because not founded on fact.

8. WITNESSES, § 48*—*when general objection to competency insufficient.* In a suit in replevin against a bank by a widow to recover property claimed by her as a gift from her husband and left by him in a safety deposit box, a general objection to the competency of plaintiff as a witness on the ground that she was the wife of deceased at the time of the transaction involved, was properly overruled, as she was competent for many purposes as against defendant bank.

9. WITNESSES, § 147*—*when testimony as to fact of conversation with deceased competent.* In a suit in replevin involving the right of a widow to property claimed by her as a gift *inter vivos* from her husband, it was not error to permit her to answer a question as to whether she had a conversation with deceased.

10. WITNESSES, § 48*—*when objection for incompetency insufficient.* In a suit in replevin by a widow to recover from a bank property left by the husband in a safety deposit box and claimed by plaintiff as a gift *inter vivos*, certain objections to plaintiff's testimony and motions to strike answers, *held,* not to raise the question that plaintiff was incompetent, under section 5 of the Evidence Act (J. & A. ¶ 5522), to testify as to admissions or conversations of the husband.

11. APPEAL AND ERROR, § 518*—*duty of court to consider testimony not objected to as incompetent.* In an action of replevin by a widow against a bank to recover property left in a safety deposit box by her husband and claimed by her as a gift *inter vivos,* where the competency of plaintiff to testify as to conversations with her husband was not raised in the trial court, her testimony as to such conversations must be considered on appeal.

12. WITNESSES, § 147*—*when wife competent to testify as to deceased husband's handwriting.* In an action by a widow to re-

cover property left by her husband in a safety deposit box in defendant's bank and claimed by her as a gift *inter vivos*, plaintiff was a competent witness as to certain letters being in the handwriting of her husband and as to her having received them by mail.

13. GIFTS, § 28*—*when letters of deceased donor admissible to establish gift inter vivos.* In an action of replevin brought by a widow against a bank to recover property left by her husband in one of defendant's safety deposit boxes and claimed by the wife as a gift *inter vivos*, letters written by the husband to the plaintiff concerning such property were properly admitted in evidence.

14. GIFTS, § 29*—*when evidence sufficient to establish gift inter vivos.* In an action of replevin by a widow to recover property claimed by her as a gift *inter vivos* from her husband, evidence held to establish an oral gift of the securities; a gift of such securities by symbolical delivery by giving to her the keys to the safety deposit box in which they were kept; and a gift by letters written by him.

15. GIFTS, § 27*—*when possession of keys prima facie evidence of ownership of contents of safety deposit box.* Possession by a widow of bank books and keys to a safety deposit box containing securities, *held*, under the circumstances proved, to be prima facie evidence that she was the owner of the contents of the box.

16. APPEAL AND ERROR, § 264*—*when argument on question not involved not considered.* Where uncontradicted evidence shows a gift *inter vivos*, it is unnecessary to consider argument of counsel upon the question of a gift *causa mortis*.

17. REPLEVIN, § 93*—*what effect of plea of ownership in another following denial of plaintiff's right.* In an action of replevin by one claiming property by a gift *inter vivos*, a plea of property in a third person, the executor of the will of the deceased former owner, is mere matter of inducement to the denial of the right of property in plaintiff and does not raise a new issue, and an objection to testimony offered to show that the executor had a right to the property was properly sustained as being immaterial.

Appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed April 13, 1921. Rehearing denied June 21, 1921.

E. D. REYNOLDS and W. L. PIERCE, for appellant.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Charles W. Arnold, Charles C. Arnold and C. C. Arnold ·it is stipulated are the same person. He and plaintiff were married in Indiana in April, 1918. Plaintiff had lived at No. 603 Gregory Street, Rockford, for 25 years. This was her home, and she lived there after her marriage. In the summer of 1918, Arnold entered the army, and was stationed at Camp Grant, just outside of Rockford. He had a business in Rockford, which was either wholly his own or he had it in partnership with his brother, Otto. Early in June, 1918, he rented box 881 in the defendant bank, and kept the rentals thereon paid during his lifetime. The box was controlled by a master key held by the bank and another key to another lock held by Arnold. He had two of these keys, so that if one should be lost he could use the other. He placed therein various Liberty Bonds and other securities. He sent his wife to that box several times to put securities into it. Plaintiff claims that afterwards he gave her the contents of the box and gave her the keys and invested her with the title thereto. She afterwards put some gold coin and some securities owned by her into it which her husband had never owned, and afterwards turned some of these into cash and deposited the cash. She claims her husband delivered to her a pass book which he held on the bank, which showed a balance in his favor of $4,934.75, and another showing a balance of six cents, and she placed said bank books in said box. About August 19, 1918, Arnold was transferred to Camp Upton, in or near New York City, and he wrote letters to his wife from that place, and inclosed her a letter to be delivered to an officer of the bank, and which was by her given to an officer of the bank. He also had a conversation with his wife by long distance telephone just before sailing for Europe to serve in the army there. Plain-

tiff presented that letter to the officers of the bank, and after consultation with the different officers and with the attorney they refused to recognize her ownership of the property. Her husband died September 21, 1918, while crossing the ocean and information of his death reached her about October 24. The bank had previously required her to get certain withdrawal slips signed by her husband before they would give her access to the box, and she mailed them to her husband, but they were not received by him and were afterwards returned to her through the mail. She claims that he gave his money and securities in that box to her by oral gift, and by giving her the keys for the purpose of a gift, and by the language of his letters in evidence. Suing in her maiden name, she brought this action in replevin against the bank to recover the contents of that box. A list of the several articles in the box is lengthy, and need not be stated here. The complete description was stipulated at the trial to be true and correct, and before the end of the trial it was practically conceded that a certain part of the gold and certain documents and certain moneys deposited were her individual moneys. The declaration charged defendant with unlawfully taking and with unlawfully detaining this money and these securities. Defendant was served with the writ, and pleaded *non cepit, non detinet*, and property in John Arnold, executor of the last will of Charles C. Arnold, deceased, and not in the plaintiff. There should have been a special replication to the third plea, but no such replication was filed. The record shows that the parties went to trial by agreement, and in such a state of the pleading a proper oral replication is presumed. *Strohm v. Hayes,* 70 Ill. 41; *Butler v. National Live Stock Ins. Co.,* 200 Ill. App. 280; *Supreme Court of Honor v. Barker,* 96 Ill. App. 490.

The sheriff returned the writ served on defendant,

but that defendant refused to turn over the property. At the trial it was stipulated that notwithstanding that return on the writ, the property should be considered as in the possession of the sheriff, and that the custody of the property was in the bank for the sheriff until the decision of the cause. The sheriff is not shown to have been a party to the stipulation. The judgment was that the ownership and right to possess the property replevied by virtue of the writ is in plaintiff, and that she have and retain the property, and that she recover one cent as damages and costs. No question is raised as to how plaintiff is to get possession of the property.

Error is assigned upon the refusal of propositions of law said to have been offered by defendant and refused. According to the abstract, after defendant rested its proofs, it requested the court to hold certain propositions to be the law in said case and set them out, and then it stated that the court refused to so hold and marked each of said propositions as refused. In fact, there is no such statement anywhere in the record, and no propositions of law are in the bill of exceptions, and what there is in the record is in an entirely different place from that indicated by the abstract. The clerk has copied into the record kept by him certain documents having the form of propositions of law and on the margin of each the word "refused" and with the file mark of the clerk upon them. There is nothing to show that they were offered by any one nor who wrote the word "refused" on the margin. The clerk has no power to preserve such documents for review nor to certify what action the court took thereon. This supposed matter not being in the bill of exceptions and being improperly copied into his record by the clerk, no ruling of the court on propositions of law is preserved for review. *Drew v. Beall,* 62 Ill. 164; *Chicago, M. & St. P. Ry.*

*Co. v. Yando,* 127 Ill. 214; *Chicago,. M. & St. P. Ry.* *Co. v. Harper,* 128 Ill. 384; *Indiana, D. & W. Ry. Co.* *v. Hendrian,* 190 Ill. 506. This cause was tried without a jury. If the court admitted incompetent evidence over the objection of defendant, this is not ground for reversal if the judgment is sustained by the preponderance of the competent evidence. *Palmer v.* *Meriden Brittannia Co.,* 188 Ill. 508; *Iroquois Furnace* *Co. v. Elphicke,* 200 Ill. 411.; *Grand Pacific Hotel Co.* *v. Pinkerton,* 217 Ill. 61. The only questions presented for our determination by this record are (1) did the court reject competent evidence offered by defendant? (2) Is the competent evidence admitted sufficient to support the judgment?

Defendant alleges plaintiff was incompetent to testify at all under sections 2 and 5 of the Evidence Act (J. & A. ¶¶ 5519, 5522). We find nothing in said section 2 which made plaintiff an incompetent witness. Defendant is not within any of the classes named in that section. Section 5 of said Act is supposed to make the wife incompetent to testify to any admissions or conversations of her husband, except in suits between the husband and wife. Plaintiff did testify to conversations by her husband. Defendant urges that her testimony as to those conversations was incompetent and that the judgment cannot stand without them. On this subject we are confronted by the question whether this objection was properly and sufficiently raised in the trial court. In *Chicago Title* *& Trust Co. v. Sagola Lumber Co.,* 242 Ill. 468, the court, on pp. 474, 475, said:

"Where a party is aware of grounds that disqualify a witness, he cannot be permitted to sit by and speculate as to the character of the evidence and afterwards object to the competency of the witness if his evidence turns out to be unfavorable to him. A party against whom a disqualified witness is offered may object and bring the matter to the attention of the

court before the evidence is given, or he may, if he sees proper, waive the disqualification and permit the witness to testify, and by failing to make his objection in apt time he is presumed to have waived his right. (1 Greenleaf on Evidence, sec. 421.) A party cannot afterwards raise the question of the incompetency of a witness by a motion to exclude his evidence if the grounds of exclusion were known to him at the time the evidence was given.''

The rule that a party aware of the fact which makes the witness incompetent must make the objection at the first opportunity, and cannot wait to see whether it is more profitable to him to let it stand or to exclude it, is thus stated in 1 Greenleaf's Evidence, sec. 421:

''In regard to the time of taking the objection to the competency of a witness, on the ground of interest, it is obvious that, from the preliminary nature of the objection, it ought in general to be taken before the witness is examined in chief. If the party is aware of the existence of the interest, he will not be permitted to examine the witness, and afterwards to object to his competency, if he should dislike his testimony. He has his election, to admit an interested person to testify against him, or not; but in this, as in all other cases, the election must be made as soon as the opportunity to make it is presented; and failing to make it at that time, he is presumed to have waived it forever.''

Plaintiff was known to the bank to be the wife of Arnold. In the letter to a bank officer which they had and read and considered he called her his wife. She was called as a witness in her own behalf, and was competent without doubt as to many things. She was asked whether she ever had any conversation with Arnold relative to any securities or money or funds or bonds or bank account or a general checking account in the defendant bank. Defendant objected to the competency of this witness because the administrator was defending. The court properly held that

the administrator was not defending, and that the court would hear the evidence to determine its competency. The court also held that if this were a suit against the administrator plaintiff would not be competent. Objection was then made that she was not competent to testify in the case, because it involved a claim by her against the estate of a deceased person, and that objection was properly overruled because it was not founded on fact. Defendant then objected to the competency of plaintiff on the ground that she was the wife of the deceased, and was such at the time of the transaction involved. That objection was not well founded as a general objection to her competency, because she was competent for many purposes as against the defendant bank. That objection was properly overruled. Besides, the question that had then been asked was only whether she had a conversation with the deceased, and it was not error to permit that question to be answered in any event. She was then asked to state the conversation. That was objected to as incompetent. The apparent meaning of the objection was that a conversation with Arnold would be incompetent. The objection now urged, that under section 5 she was not competent to testify to a conversation with her husband, was not presented. A motion was made to exclude her answer on the ground that it was not competent. That objection was properly overruled. It was then objected that the proof ought to be confined to the specific articles contained in the box, and that objection was overruled. She was then asked if Arnold said anything to the witness on a certain subject, and the objection was made that that proof was of a testamentary character, and that objection was overruled. She made some answers that were not responsive to questions, and the court excluded them. She was again asked to state what a certain conversation with her husband was, and a general objection was made

to that, and as a conversation with Arnold was competent, a general objection did not raise the question whether she was competent to give the testimony. After she had answered that question there was a motion to strike out the answer as incompetent and immaterial. The answer was not incompetent or immaterial, and the objection that the wife was incompetent to testify to conversations with her husband was not made. Thereafter she made numerous answers detailing conversations with her husband to which no objection was made. She was cross-examined for the defendant as to things which her husband said to her. Plaintiff then called and examined an officer of the bank, and after his testimony, plaintiff was again called to the stand and testified further, and at the close of plaintiff's evidence defendant moved to exclude all the evidence offered on behalf of the plaintiff except the testimony of the officer of the bank, on the same grounds that the testimony was objected to, and because the testimony did not establish a gift *inter vivos* of the funds, and the court reserved a ruling upon that question. It therefore appears that the competency of plaintiff to testify to a conversation with her husband under section 5 of the Evidence Act was never raised. Her competency was questioned but once during the trial, and that was as to her competency as a witness to testify on any subject. The conversations generally were allowed to go in in chief and she was cross-examined about them without any suggestion that she was not competent to testify to that conversation because of that statute. Under the authorities above cited the question of her competency to testify to said conversations is not raised in this record.

The only tenable objection to the evidence of plaintiff would be her incompetency to testify to conversations with her husband, because of the provisions of section 5 of the Evidence Act. The conversations

were competent if proved by a competent witness. Defendant was under no obligation to make that objection. Defendant's attorney may have concluded it would be beneficial to it to let her narrate the conversations; he may have believed that he could get valuable facts or admissions from her. We conclude that as her competency to testify to conversations with her husband is not raised on this record, her testimony as to such conversations must be considered here. Plaintiff testified that the letters offered were in the handwriting of her husband, and received by her by mail. She was a competent witness against the defendant on those subjects. The court sustained an objection to one letter because plaintiff had erased a sentence therein which she testified was personal to her herself and her husband, and she could not state the language erased. We see no reason why the other letters were not properly admitted. They support plaintiff's contentions. We do not think that the closing sentences of the letter to the cashier tend to show an absolute gift to the wife was not intended.

We think the proof fairly establishes: (1) An oral gift of these securities; (2) a gift of the securities by giving her the keys to the box for that purpose; (3) a gift by the letters written by deceased. The delivery of the keys and of the bank book by Arnold to his wife we regard as a symbolical delivery of his property in that safety box, sufficient to complete the gift. We are of opinion that the possession by plaintiff of the bank books and of the keys to the safety deposit box, under the circumstances proved, is prima facie evidence that she is the owner of the contents of the box. *Ransom v. Jones*, 2 Ill. (1 Scam.) 291; *Reed v. Douthit*, 62 Ill. 348; *Griffin v. Griffin*, 125 Ill. 430; *Martin v. Martin*, 174 Ill. 371; *Dunlop v. Lamb*, 182 Ill. 319. We discussed the question of symbolical delivery of such property and held it sufficient in *Moore v. Brandenburg*, 179 Ill. App. 253, and

in *O'Connor v. Messenger*, 183 Ill. App. 1, and in each of those cases a certiorari was denied by the Supreme Court. See also *Merrill v. Merrill*, 187 Ill. App. 589. Even if plaintiff's testimony to a conversation with her husband where any objection thereto was made, be excluded from consideration, the other evidence supports a gift. It is not contradicted. It was believed by the trial judge, who saw the witness and heard her testify. As we are of opinion that the uncontradicted evidence shows a gift *inter vivos*, it is unnecessary to discuss the arguments of counsel upon the question of a gift *causa mortis*.

It was stipulated that Arnold died testate; that his will was admitted to probate; that John Arnold was appointed executor and qualified; that administration had not been closed, and that no inventory had been filed. Thereupon defendant offered to show that claims amounting to over $3,000 had been filed against said estate, of which $500 or less had been allowed; and in connection with the offer defendant's counsel stated that deceased died owning two vacant lots worth about $700. This offer was stated to be for the purpose of showing that the executor had the right to this fund. An objection by plaintiff's counsel that this was immaterial was sustained. The executor was not a party to this suit. The pleas of *non cepit* and *non detinet* conceded the right of property to be in plaintiff, and only put in issue the taking and detention by defendant. The third plea only put in issue plaintiff's right to the property, and its allegation of property in the executor was mere matter of inducement. Plaintiff must take issue on the denial of her right and not on the matter of inducement. *Anderson v. Talcott*, 6 Ill. (1 Gilm.) 365; *Van Namee v. Bradley*, 69 Ill. 299. In *Kee & Chapell Dairy Co. v. Pennsylvania Co.*, 291 Ill. 248, it is held that under a plea like the third plea here, the only issuable fact is the right of property in the plaintiff, and that the

allegation of property in a third person is mere matter of inducement to the denial of the right of property in the plaintiff; that such a plea does not raise a new issue; and that if defendant in such a suit prevails, the third person in whom defendant alleged the property, not being a privy of the defendant, cannot take the benefit of the judgment.

The judgment is therefore affirmed.

*Affirmed.*